J-S42027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WYATT LEE RICKRODE | : | |
| | : | |
| Appellant | : | No. 363 MDA 2025 |

Appeal from the PCRA Order Entered February 25, 2025
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000556-2020

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                    **FILED: DECEMBER 23, 2025**

Appellant, Wyatt Lee Rickrode, appeals from the order entered in the Adams County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The trial court set forth the relevant facts underlying this case as follows:

> On May 23, 2020, Jesse Carbaugh ([the victim]) and several of his acquaintances entered onto the land at 3596 Chambersburg Rd., Franklin Township, to retrieve a few large wooden poles that the Carbaugh family had previously left on the property.  The Carbaughs had rented the mobile home at 3596 Chambersburg Rd. for a period and used the poles as part of a structure attached to the back of the home.  The Carbaughs received permission from the landlord to return to the property to retrieve the poles.
>
> The new tenant at 3596 Chambersburg Rd., [Appellant],

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

despite being notified in advance that the Carbaughs would be coming to get the poles, claimed that he felt threatened by their presence from the moment that they entered the property. Appellant did not know [the victim] before [the victim] arrived at the property that day. An argument ensued between the parties as to how far into the back yard Dan Carbaugh, [the victim's] father, could drive his truck for purposes of loading the very heavy poles.

After the verbal argument, Appellant, who was visibly agitated according to eyewitness testimony, entered his mobile home. His family and friends were inside the home and observed Appellant walk to his bedroom, grab a shotgun, load ammunition into the weapon, and walk back toward the door to leave. Some of those acquaintances attempted to prevent Appellant from leaving with the weapon, even attempting to block his exit and grabbing onto him. Nevertheless, Appellant went out of the front door, walked down the front porch steps, and turned the corner of the home to confront [the victim].

Eyewitness testimony revealed that another verbal argument between Appellant and [the victim] ensued at that point. [The victim] was unarmed. A brief moment after the argument began, Appellant discharged the firearm at [the victim] from a distance of one (1) to three (3) feet away. The gunshot hit [the victim] in the stomach. He would later die as a result of that gunshot wound. Appellant asserted that he was acting in self-defense when he shot [the victim]. Consistent with that contention, Appellant would later assert the defense of justification at trial.

(Trial Court Opinion, 7/22/22, at 1-2).

On February 11, 2022, a jury convicted Appellant of third-degree murder. On April 21, 2022, the court sentenced Appellant to 20 to 40 years of incarceration. On January 19, 2023, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied allowance of appeal. *See Commonwealth v. Rickrode*, No. 746 MDA 2022 (filed Jan. 19, 2023)

(unpublished memorandum), *appeal denied*, \_\_\_ Pa. \_\_\_, No. 75 MAL 2023 (filed Jul. 31, 2023).

On February 20, 2024, Appellant filed a timely first PCRA petition. The court appointed counsel, who filed an amended petition on May 14, 2024. On October 15, 2024, Appellant filed a second amended petition. On November 27, 2024, Appellant filed a third amended petition.

On December 17, 2024, the court held an evidentiary hearing. On February 25, 2025, the court denied PCRA relief. That same day, Appellant filed a timely notice of appeal. On March 17, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On April 4, 2024, Appellant filed his concise statement but did not serve it on the PCRA court.[2]

On appeal, Appellant raises the following issues for our review:

> I. DID THE [PCRA] COURT ERR IN DENYING APPELLANT'S POST-CONVICTION RELIEF ACT PETITION WHERE HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES'

---

[2] Counsel's failure to serve the PCRA court with a time-stamped copy of the Pa.R.A.P. 1925(b) statement as directed amounts to *per se* ineffectiveness. **See Commonwealth v. Burton**, No. 832 EDA 2018 (Pa.Super. filed June 7, 2019) (unpublished memorandum) (remanding for appellant's counsel to serve upon PCRA judge time-stamped copy of Rule 1925(b) statement *nunc pro tunc* within 10 days and for preparation of Rule 1925(a) opinion, where PCRA court had deemed all issues waived for failure to comply with Rule). **See also** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive authority). In this case, however, the PCRA court was able to address Appellant's issues on the merits. Thus, notwithstanding counsel's ineffectiveness, we decline to remand and proceed to address the merits of the issues raised on appeal.

[CONSTITUTION] AND ARTICLE I, SECTION 9 OF THE PENNSYLVANIA CONSTITUTION?

II. DID THE [PCRA] COURT ERR IN DENYING APPELLANT POST-CONVICTION RELIEF ACT PETITION WHERE HE WAS DENIED A FAIR AND IMPARTIAL TRIAL THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES' [CONSTITUTION] AND ARTICLE I, SECTION 9 OF THE PENNSYLVANIA CONSTITUTION?

(Appellant's Brief at 9).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

> Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts.

**Beatty, supra** at 961 (internal citations and quotation marks omitted).

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining

process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit." *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

>The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 33, 807 A.2d 872, 883 (2002)).

In Appellant's first issue, he argues that trial counsel was ineffective for failing to cross-examine Daniel Carbaugh and Tina Glacken with evidence of their outstanding criminal matters and bench warrants. Specifically, Appellant contends that counsel should have impeached Ms. Glacken with her charge for charge of contempt for failure to comply with an order to pay fines and

costs, at docket No. CP-01-MD-0001551-2021. The matter was dismissed on January 25, 2022. Second, Appellant avers that counsel should have impeached Daniel Carbaugh with his charge for failure to comply with a tax office request to examine records for audit purposes, docketed at MJ-51304-NT-0000564-2021. Mr. Carbaugh entered a guilty plea to this offense before a magistrate judge on February 14, 2022.[3]

Appellant argues that Ms. Glacken and Mr. Carbaugh's testimony directly rebutted his self-defense claim. Ms. Glacken testified that Appellant came out of the house with a gun and began to argue with the party that had come to retrieve property. Specifically, Ms. Glacken testified that Appellant stated that "he would kill all you motherfuckers." (N.T. Trial, 2/8/22, at 123). Appellant then pointed his finger at the victim and said, "I'll shoot you." (**See id.** at 141-42). Ms. Glacken testified that Appellant remained in the house for only a few seconds before emerging with a gun and shooting the victim.

Mr. Carbaugh testified that when the group arrived on the property and argued with Appellant, Appellant came out of the house with a long rifle and threatened to kill everyone present before the gun went off. Mr. Carbaugh also testified that Appellant was standing three to five feet away when the gun went off, and that he had been holding the gun in front of him.

---

[3] In Appellant's PCRA petition, he also argued that Ms. Glacken and Mr. Carbaugh had passed bad checks. It was unclear from the petition whether they had ever been charged with this offense. Nevertheless, Appellant appears to have abandoned this argument on appeal.

Appellant asserts that counsel's entire trial strategy was predicated on a claim of self-defense, and that he produced evidence to support that claim. Appellant maintains that counsel's failure to impeach these witnesses regarding their prior criminal matters prejudiced him. Further, Appellant argues that because counsel did not impeach Daniel Carbaugh, he could not argue that Mr. Carbaugh was attempting to curry favor with the Commonwealth for the resolution of his charges.[4] Appellant insists that there could be no reasonable trial strategy to justify this oversight. Appellant concludes counsel was ineffective on these grounds, and this Court must grant relief. We disagree.

With regard to the impeachment of witnesses:

> Evidence of a witness's conviction for a crime involving dishonesty or a false statement is generally admissible. Pa.R.E. 609(a). A failure to so impeach a key witness is considered ineffectiveness in the absence of a reasonable strategic basis for not impeaching.

*Commonwealth v. Small*, 602 Pa. 425, 452, 980 A.2d 549, 565 (2009) (some citations omitted). Nevertheless,

> the veracity of a witness may not be impeached by prior arrests which have not led to convictions. Pa.R.E. 608(b) precludes the admission of specific instances of misconduct to attack a witness' character for truthfulness while Pa.R.E.

---

[4] Trial counsel did produce evidence of a $1,800.00 judgment against Mr. Carbaugh that his former landlords had obtained against him in connection with eviction proceedings. (*See* N.T. Trial, 2/7/25, at 82-87). Mr. Carbaugh insisted that the eviction matter had been "thrown out" by the magisterial district judge, and that he had never seen the paperwork regarding a judgment. (*See id.* at 86-87).

- 8 -

609(a) requires an actual conviction of a crime involving dishonesty or false statement in order for a witness's credibility to be attacked with evidence of the crime.

*Commonwealth v. Chmiel*, 585 Pa. 547, 604, 889 A.2d 501, 534-35 (2005) (some citations omitted). Therefore, where there is no conviction, a court may appropriately bar the use of such evidence to challenge credibility. *See id.* Nevertheless, a witness **may** be cross-examined as to "any matter tending to show the interest of or bias of that witness," which includes pending charges in the "same jurisdiction in which the case at the bar was being tried." *See Commonwealth v. Nolen*, 535 Pa. 77, 83, 634 A.2d 12, 195 (1993).

Instantly, the PCRA court observed:

> [Appellant] … claims ineffective assistance of counsel for failure to impeach the testimony of Daniel Carbaugh with evidence of his crimes of dishonesty, specifically bad checks and summary charges, and for failure to impeach Tina Glacken's testimony with evidence of bad checks and a bench warrant in a contempt matter. As described by Attorney Rice, choosing not to impeach Daniel Carbaugh and Tina Glacken was a reasonable trial strategy designed to effectuate her client's interest in maintaining good rapport with the jury.
>
> \* \* \*
>
> Per Attorney Rice's testimony at the PCRA hearing, she was aware that there were some unrelated charges, prior and pending, against Daniel Carbaugh[,] but as he was the victim's father, she chose to not impeach with this information. Given the defense strategy was self-defense, Attorney Rice felt it important to [elicit] sympathy and understanding for [Appellant] while not aggressively insulting the victim's family on the stand. She testified it was important to maintain good rapport with the jury and not run the risk of alienating them against [Appellant] with this line of impeachment. In other words, she felt the risks

- 9 -

outweighed the possible rewards.

Similarly, Tina Glacken is the victim's stepmother and as such Attorney Rice employed a similar strategy of not impeaching Tina Glacken with relatively minor infractions in the hopes of maintaining a good relationship with the jury by being respectful to the grieving family members. Attorney Rice has employed this strategy in other homicide cases prior to this one and this [c]ourt finds this trial strategy reasonable.

Moreover, the convictions referenced by [Appellant] were not criminal offenses and were either minor or summary offenses. The claim regarding impeachment for the summary tax charge against Daniel Carbaugh is meritless as under Pa.RE. Rule 609(a) impeachment by evidence of a criminal conviction required that the witness has been convicted of a crime, whether by verdict or by a plea of guilty or *nolo contendere*. Here, Daniel Carbaugh had not been convicted of the summary tax charge at the time of trial. Daniel Carbaugh pled guilty to the charges on February 14, 2022, which was **after** he testified on trial. Daniel Carbaugh and Tina Glacken were never criminally charged with providing bad checks which would make the evidence inadmissible at trial under Pa.RE. Rule 609(a).

Further, [Appellant's] argument that Daniel Carbaugh was trying to win favor with the Commonwealth was disputed by testimony from Attorney Rice, at the PCRA hearing, and corroborated by the Adams County District Attorney. Moreover, there is no evidence that impeachment of Daniel Carbaugh and Tina Glacken on these minor charges would have changed the outcome of this case. The jury clearly rejected the self-defense argument. In fact, this [c]ourt felt the evidence establishing that [Appellant] safely retreated into his home after a verbal argument and, with premeditation, selected a firearm, loaded it, then left the safety of his home to re-engage with the victim, and then promptly fired the fatal shot at point blank range actually supported a verdict of first-degree murder. It is, therefore, apparent that Attorney Rice's trial strategy may have been successful in seeing the jury return a verdict on the lesser homicide charge.

(PCRA Court Opinion, 2/25/25, at 8-10) (emphasis in original).

The record supports the PCRA court's decision. **See Beatty, supra**. Even if the proffered evidence were admissible, trial counsel explained her strategy for not eliciting the proffered impeachment testimony. Trial counsel explained her strategy of attempting to avoid acting unsympathetically towards the father and stepmother of the victim.[5] The PCRA court found this strategy reasonable. **See King, supra**. Further, we give great deference to the PCRA court's credibility determination in counsel's favor, as it is supported by the record. **See Beatty, supra**. Therefore, Appellant is not entitled to relief on this issue.[6]

In Appellant's second issue, he argues that trial counsel was ineffective for failing to object to the Commonwealth's 639 leading questions and leading questions introduced through prior consistent statements. Specifically,

_____

[5] For example, regarding Mr. Carbaugh, trial counsel explained at the PCRA hearing: "This is a homicide of a son versus a summary tax case. No, I absolutely did not think that [summary matter] was anything credible that I needed to pursue." (N.T. PCRA Hearing, 12/17/24, at 10). Counsel went on to state, "My theory was that [Appellant] had to shoot [victim] in self-defense, but that nobody was happy about it and that we recognized the grief that it had caused the family … So I might have made a different choice if it were a felony or even a misdemeanor *crimen falsi*, but I did not think that I should be badgering the parent witnesses with summaries." (**See id.** at 15).

[6] To the extent that Appellant makes argument regarding Ms. Glacken's alleged bench warrants or bad checks charge, Appellant did not preserve these arguments in his Rule 1925(b) statement, so they are waived. **See Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998) (stating that failure to raise issue in Rule 1925(b) statement constitutes waiver on appeal).

Appellant contends that trial counsel erred in failing to object to the Commonwealth's treatment of Zachary Rickrode, Lemuel Robert Crawford, Paula Garrigan, and Claire Irene Rickrode as hostile or adverse witnesses.[7] Appellant argues that this resulted in the admission of otherwise inadmissible evidence and that he was prejudiced as a result. We disagree.

Initially, we note that we review a trial court's evidentiary ruling permitting a party to treat their witness as hostile for an abuse of discretion. *Commonwealth v. Bibbs*, 970 A.2d 440 (Pa.Super. 2009).

Pa.R.E. 611 provides, in relevant part:

> **Rule 611. Mode and Order of Examining Witnesses and Presenting Evidence**
>
> \* \* \*
>
> **(c) Leading Questions.** Leading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:
>
> (1) on cross-examination; and
>
> (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. A witness so

_____

[7] To the extent Appellant argues that counsel was ineffective for failing to object to the Commonwealth's leading questions of other witnesses, including Daniel Carbaugh, Tina Glacken, Ranee Cool, Joseph Gonzalez, Cheyenna Vanderau, and Elizabeth Reaver, these arguments are waived due to his failure to raise them before the PCRA court in his petitions or at the PCRA hearing. *See Commonwealth v. Roney*, 622 Pa. 1, 28-29, 79 A.3d 595, 611 (2013), *cert. denied*, 574 U.S. 829, 135 S.Ct. 56, 190 L.Ed.2d 56 (2014) (holding issue was waived due to failure to present it to PCRA court); Pa.R.A.P. 302(a) (stating: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

examined should usually be interrogated by all other parties as to whom the witness is not hostile or adverse as if under redirect examination.

Pa.R.E. 611.

A party may properly be allowed to treat a witness as hostile if the witness "evidenced [an] overt unwillingness to testify and ... belligerence on the stand." ***Bibbs, supra*** at 453. In other words, a "hostile" witness is one "who shows himself or herself so adverse to answering questions, whatever the source of the antagonism, that leading questions may be used to press the questions home." ***Commonwealth v. Lambert***, 765 A.2d 306, 357 n.42 (quotation omitted). "A witness may be treated as hostile by the party calling him where the testimony of the witness is unexpected, contradictory to earlier statements, and harmful to the party calling the witness, and where an injustice would result if the request to treat the witness as hostile is denied." ***Bibbs, supra*** at 453 (citation omitted). ***See also Commonwealth v. Mollett***, 5 A.3d 291, 309 (Pa.Super. 2010).

Instantly, on January 21, 2022, the Commonwealth filed its trial memorandum which stated, in part:

> The Commonwealth is also expected to call witnesses who were with [Appellant] and who are associated with him either via blood or friendship. The Commonwealth will seek to lead them on direct as if they are on cross examination since they are associates of [Appellant]. Rule 611(c)(2) permits this when a witness is identified with an adverse party. ... These witnesses were with the defendant in the trailer and observed him obtain the shotgun. They also attempted to block his exit to the trailer. They did not observe the actual shooting.

- 13 -

(Commonwealth's Trial Memorandum, 1/21/22, at 2). Although Appellant filed his own trial memorandum and motions in *limine*, he did not object to this request. At trial, the Commonwealth reiterated its request to treat certain witnesses as hostile. When asked if there were any objections, trial counsel responded, "No." (N.T. Trial, 2/8/22, at 113).

At the PCRA hearing, trial counsel explained:

[W]e had the statements of every witness and I knew that some of the witnesses were going to be good for both the Commonwealth and the Defense and bad for both the Commonwealth and the Defense and I anticipated neither Mr. Zawisky or I would be much surprised by any witness testimony.

My understanding, which practically goes back to law school, is if you want to have the [c]ourt declare a witness to be hostile, that there's an element of surprise that the witness is not testifying to what they had earlier told you or testified to, but I knew that every single witness that both Mr. Zawisky and I had their former statements and that both of us would be responding in having to need a little bit of leading the witnesses when they went astray from our understanding of their earlier statements. So it just didn't really strike me as a major issue, I knew it was coming.

(N.T. PCRA Hearing, 12/17/24, at 19-20).

The PCRA court evaluated this ineffectiveness claim as follows:

A party may use leading questions on direct examination when questioning a hostile witness or a witness identified with an adverse party. Pa.R.E. 611(c)(2) (emphasis added). Further, leading questions can be used when necessary to develop the witness's testimony. Pa.R.E. 611(c). Here, Zachary Rickrode was [Appellant's] brother; Lemuel Crawford was [Appellant's] friend; Paula Garrigan was [Appellant's] girlfriend (now wife) and mother of his child; and Claire Rickrode was [Appellant's] sister-in-law and the

- 14 -

wife of Zachary Rickrode. Family members, significant others, and close friends of [Appellant] are connected to an adverse party of the Commonwealth. ***See, Commonwealth v. Lambert***, 765 A.2d 306, 359 n.21 (Pa.Super. 2000).

Furthermore, in the Commonwealth's trial memorandum, these witnesses were expressly identified as adverse/hostile witnesses. [Appellant's] PCRA petition and brief make note of instances where Attorney Rice did not object to leading questions. However, many of these questions were necessary to develop witness testimony and even if not, these witnesses were deemed adverse/hostile under the rules of evidence which allow leading questions.

Even if the claim had merit, [Appellant's] claim still fails to meet the other prongs of the test for ineffectiveness of counsel. Even if Attorney Rice had objected to the leading questions, this [c]ourt would have overruled the objection. Any alleged failure to object therefore did not affect the outcome of the proceedings.

In addition, Attorney Rice stated that choosing not to object was part of her trial strategy to maintain good rapport with the jury to further [Appellant's] claim of self-defense. This [c]ourt finds this trial strategy reasonable. Attorney Rice stated she made objections to leading questions where appropriate and, in the case of at least one witness, she believed the leading questions by the Commonwealth were beneficial to [Appellant], so she chose not to object.

Additionally, [Appellant] has not alleged, much less proven, how any particular objection to the leading questions would have changed the verdict or how the leading questions prejudiced [Appellant].

(PCRA Court Opinion, 2/25/25, at 11-12).

The record supports the PCRA court's decision. ***See Beatty, supra***.

Even if any of the questions at issue were objectionable, trial counsel

explained her trial strategy and the court credited this testimony and found it

- 15 -

reasonable. *See id. See also King, supra*. Once again, we give great deference to the PCRA court's credibility determination in counsel's favor, as it is supported by the record. *See Beatty, supra*. Further, we agree with the PCRA court that Appellant has not demonstrated prejudice.[8] *See Spotz, supra*. [9] Accordingly, Appellant is not entitled to relief on this ineffectiveness claim, and we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2025

---

[8] Although Appellant argues that the leading questions resulted in the admission of otherwise inadmissible evidence, he has not specified the allegedly inadmissible evidence to which he refers.

[9] Appellant focuses much of his argument on the testimony of Ranee Cool. However, as Appellant failed to preserve this issue in his petition or at the hearing before the PCRA court, it is waived. *See* Pa.R.A.P. 302(a); *Roney, supra*.